Argued October 29, decided November 20, 1913.

## McKENNA *v.* McHALEY.

(136 Pac. 340.)

**Counties—Employment of Detective—Ratification.**

1. Where an account of the deputy district attorney for compensation additional to his salary was one that the County Court might legally contract, it could ratify it when the services rendered were at the request of a member of the court.

**Counties—Powers of County Court—Employment of Detective.**

2. The County Court can employ a detective to make investigation looking to the prosecution of criminals.

**Counties—Action Against County Officers—Issues and Proof.**

3. In an action against county officers to compel the return of an amount paid to a deputy prosecuting officer, in addition to his salary, as compensation for investigation with a view to criminal prosecution, the fact that the statement and warrant pleaded designated it as compensation for extra services as district attorney would not exclude proof as to the authority and circumstances under which the services are rendered.

From Grant: Dalton Biggs, Judge.

En Banc. Statement by Mr. Justice Eakin.

This is a suit brought by Alex McKenna, W. C. Thompson, J. M. Franklin, R. A. Hines and A. J.

Fletcher, as taxpayers of Grand County, against R. R. McHaley, B. C. Trowbridge, Allen Porter, W. W. Wood, J. W. McCullough and Grant County, Oregon, a public corporation, for the purpose of having restored to the county treasury the sum of $250, paid by the county to W. W. Wood, which sum is alleged to have been paid to him as deputy district attorney for the county. The facts out of which the suit arose are: That on December 25, 1909, Oliver. Snyder was under arrest, charged with murder, and was unlawfully taken from the officer who had him in custody, and shot, and killed; that on the 5th day of January, 1910, R. R. Mc-Haley, as county judge of the county, instructed Wood to go to the vicinity of where the said crime had been committed, near Hamilton or Monument, to investigate as to all the facts and circumstances surrounding the commission of the crime, to detect the parties guilty of the same, and to secure evidence that the perpetrators of the crime might be prosecuted; that the county would pay him the expenses incurred therefor, to which arrangement defendants Porter and Trowbridge, the county commissioners, a little later also agreed; that thereafter, on July 9, 1910, the matter came up formally before the County Court, and $250 was allowed to W. W. Wood as compensation for said expenses, and a warrant was issued to him therefor, which was paid by the county treasurer. This suit is brought to compel the return to the county treasury of the amount so paid. In the statement presented to the County Court the amount allowed is mentioned as, "extra compensation on account of criminal cases," and the warrant says, "for extra compensation as deputy district attorney." The statement, however, was not made out by Wood.

Defendants answered the complaint, setting out the circumstances leading up to the issuance and payment

of the warrant. The allegation of the answer relating to the arrangement by which the county judge authorized Wood to investigate the case is as follows: "That on or about the 5th day of January, 1910, the defendant R. R. McHaley, as county judge of the defendant Grant County, Oregon, conferred and advised with the defendant W. W. Wood in regard to said crime and the necessity of apprehending and bringing to justice the perpetrators thereof, and did then and there contract with and employ the said W. W. Wood for and in behalf of Grant County, Oregon, to go to the vicinity where the same crime had been committed, as aforesaid, and to thoroughly investigate all the facts and circumstances surrounding the commission of said crime, and to detect the parties guilty of the same, and to seek out and find any and all evidence by means of which the perpetrators of the crime might be prosecuted and brought to justice, and then and there promised and agreed that the defendant Grant County, Oregon, would pay all reasonable costs and expenses of said service." And the testimony of R. R. McHaley relating thereto is to the effect that shortly after the lynching of Snyder, as soon as he heard of the killing: "I told him [Wood] I thought so too [that it ought to be investigated], and I told him I thought the best thing to do would be to go over there, and try to investigate it, and try to find out who the guilty parties were, and get all the information he could relative to running down the criminals," and on behalf of the county he authorized him to do so, and told him, whatever cost there was the County Court would pay him. As soon as Porter and Trowbridge came over, he put the matter up to them, and they told him he had done right, and ratified it. The trial of this suit resulted in findings and decree against plaintiffs, and the suit was dismissed. Plaintiffs appeal.

AFFIRMED.

For appellants there was a brief, with oral arguments by *Mr. Errett Hicks* and *Mr. J. E. Marks.*

For respondents there was a brief over the names of *Mr. A. D. Leedy, Mr. V. G. Cozad* and *Mr. George H. Cattenach,* with an oral argument by *Mr. Leedy.*

Mr. Justice Eakin delivered the opinion of the court.

1. There is little or no dispute as to the facts. · The whole contention of plaintiffs is that a deputy district attorney is not entitled to extra compensation, his salary being the whole measure of his remuneration. They further contend that defendants' allegation of a contract with the county judge can only be established by the entries in the court journal. Counsel urge in the brief that from a fair consideration of the evidence Wood received from the county the $250 for services rendered as deputy district attorney. We think this contention is not a proper conclusion from the evidence. The evidence of Judge McHaley quoted above shows that the service asked of Wood was not in the line of his duties as district attorney, but the work of a detective; and the testimony of Wood recites the character of the service rendered in detail, showing it was not service in his official capacity. It was considered by the judge, as well as by Wood, that it was not in the line of his official duties, and, although it is designated in the statement and the warrant as "compensation for extra services as district attorney," yet the facts are different, and neither in the answer nor in the evidence is it claimed that the service was rendered in his official capacity. If the action were by Wood against the county to recover, in which the county was resisting his claim, a very different issue would arise; but here we have an agreement by

the members composing the county court, expressed unofficially, that Wood would be compensated by the court when it convened, and the court actually approved the action of the judge and the promise of the commissioners by appropriating the money to him therefor, thus constituting a complete ratification of the agreement of the county judge. Of course, that would not bar the court if the claim were an illegal one, or fraudulent, and that is the only question to be determined. If the account is one that the court might legally contract, then it can approve it when the services rendered are at the request of a member of the court.

2. We do not conceive there can be any doubt but that the County Court can employ a detective as a special executive officer to render services of this character. It is said by Mr. Justice McBride, on the first appeal of this case (62 Or. 1, 123 Pac. 1069), that traveling expenses in hunting up witnesses and other expenses of like character do not appear to be for matters within the regular duties of a district attorney, and that such expenses necessary to bring criminals to justice would constitute a valid claim for which he would be entitled to compensation. *Steiner v. Polk County,* 40 Or. 124 (66 Pac. 707), is a case involving this exact question. The County Court ratified the act of the county judge in providing for the care of a pauper, but refused to allow the whole of the expenses incurred therefor, holding that the ratification is equivalent to an allegation of authorization, and binds the County Court the same as an individual.

3. We think that neither the form of the bill presented nor the form of the warrant issued is sufficient to exclude the facts, and that the proof is not at all at variance with the pleadings.

The decree is affirmed.          Affirmed.